# STATE OF MICHIGAN

# COURT OF APPEALS

CLIFFORD LEE, JR.,

        Plaintiff-Appellee,

v

ROBERT CROSKEY and WOLPIN COMPANY,
d/b/a TRI-COUNTY BEVERAGE
COMPANY/WAYNE COUNTY,

        Defendants-Appellants.

UNPUBLISHED
April 21, 2015

No. 313217
Wayne Circuit Court
LC No. 11-003138-NI

EMILY KINCAID,

        Plaintiff-Appellee,

v

ROBERT CROSKEY and WOLPIN COMPANY,
d/b/a TRI-COUNTY BEVERAGE
COMPANY/WAYNE COUNTY,

        Defendants-Appellants.

No. 313218[1]
Wayne Circuit Court
LC No. 11-004918-NI

Before: BECKERING, P.J., and CAVANAGH and SAAD, JJ.

PER CURIAM.

In Docket No. 313217, defendants, Robert Croskey and Wolpin Company, d/b/a Tri-County Beverage Company/Wayne County, appeal as on leave granted[2] an order denying their

---

[1] The appeals were "consolidated for the efficient administration of the appellate process." *Lee v Croskey*, unpublished order of the Court of Appeals, entered October 10, 2013 (Docket Nos. 313217, 313218).

[2] See *Lee v Croskey*, 495 Mich 864 (2013).

-1-

motion for summary disposition. In Docket No. 313218, Croskey and Wolpin appeal as on leave granted the same order. In both cases, we reverse and remand for entry of summary disposition for defendants.

Defendants argue that plaintiffs' claims are barred by the firefighters rule codified in MCL 600.2967(1). We agree.

"This Court reviews de novo a trial court's decision on a motion for summary disposition." *Hackel v Macomb Co Comm*, 298 Mich App 311, 315; 826 NW2d 753 (2012). "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). "Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

Statutory interpretation presents a question of law that is reviewed de novo. *In re MCI Telecom Complaint*, 460 Mich 396, 413; 596 NW2d 164 (1999). "If the language in a statute is clear and unambiguous, this Court assumes that the Legislature intended its plain meaning, and the statute must be enforced as written. This Court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Bay City v Bay Co Treasurer*, 292 Mich App 156, 166-167; 807 NW2d 892 (2011) (quotation marks and citations omitted).

As explained in *Boulton v Fenton Twp*, 272 Mich App 456, 460; 726 NW2d 733 (2006):

> The common-law firefighters' rule was first adopted in Michigan in *Kreski v Modern Wholesale Electric Supply Co*, 429 Mich 347; 415 NW2d 178 (1987). The rule generally stated that "a fire fighter or police officer may not recover damages from a private party for *negligence* in the creation of the reason for the safety officer's presence." *Id*. at 358 (emphasis added).

> The Legislature codified the rule by enacting 1998 PA 389, MCL 600.2965 to 600.2967, effective November 30, 1998. MCL 600.2965 abrogates the common-law rule.

"Michigan courts recognized the existence of several exceptions to the common-law fireman's rule, for example, when a safety officer alleged wrongdoing that rose to the level of wilful, wanton, or intentional misconduct, or when the alleged wrongdoing occurred after the safety officer had been called to the scene and was independent of the reason that the safety officer was called to the scene." *Tull v WTF, Inc*, 268 Mich App 24, 27; 706 NW2d 439 (2005), citing *Harris-Fields v Syze*, 461 Mich 188, 191-192; 600 NW2d 611 (1999).

> The Legislature abolished the common-law fireman's rule, however, when it enacted 1998 PA 389. The statute replaced the common-law rule with a

statutory scheme that generally incorporated the common-law exceptions, but expanded the circumstances under which a safety officer could recover for damages sustained while on duty beyond the narrow, common-law rule. See MCL 600.2965 to 600.2967. [*Tull*, 268 Mich App at 28.]

MCL 600.2967 provides, in relevant part:

(1) Except as provided in section 2966, a firefighter or police officer who seeks to recover damages for injury or death arising from the normal, inherent, and foreseeable risks of his or her profession while acting in his or her official capacity must prove that 1 or more of the following circumstances are present:

(a) An injury or resulting death that is a basis for the cause of action was caused by a person's conduct and that conduct is 1 or more of the following:

(*i*) Grossly negligent.

(*ii*) Wanton.

(*iii*) Willful.

(*iv*) Intentional.

(*v*) Conduct that results in a conviction, guilty plea, or plea of no contest to a crime under state or federal law, or a local criminal ordinance that substantially corresponds to a crime under state law.

(b) The cause of action is a product liability action . . . .

(c) An injury or resulting death that is a basis for the cause of action was caused by a person's ordinary negligence and all of the following are true:

(*i)* The negligent person is not someone whose act or omission resulted in the firefighter's or police officer's presence at the place where the injury occurred; or the person is someone whose act or omission resulted in the firefighter's or police officer's presence at the place where the injury occurred and the action is based on an act by that person that occurred after the firefighter or police officer arrived at the place where the injury occurred.

(*ii*) The negligent person is not someone from whom the firefighter or police officer had sought or obtained assistance or is not an owner or tenant of the property from where the firefighter or police officer sought or obtained assistance.

(*iii*) The negligent person is not someone who is an owner or tenant of the property that the firefighter or police officer was on in his or her official capacity; or the person is someone who is an owner or tenant of the property that the firefighter or police officer was on in his or her official capacity and the action is

based on an act by that person that occurred after the firefighter or police officer arrived at the place where the injury occurred.

(*iv*) The firefighter or police officer was engaged in 1 or more of the following:

(A) Operating, or riding in or on, a motor vehicle that is being operated in conformity with the laws applicable to the general public.

(B) An act involving the legally required or authorized duties of the profession that did not substantially increase the likelihood of the resulting death or injury. The court shall not consider the firefighter or police officer to have been engaged in an act that substantially increased the likelihood of death or injury if the injury occurred within a highway right-of-way, if there was emergency lighting activated at the scene, and if the firefighter or police officer was engaged in emergency medical services, accessing a fire hydrant, traffic control, motorist assistance, or a traffic stop for a possible violation of law. [MCL 600.2967.]

"In sum, subsection 1 permits a safety officer to recover damages for injuries arising from the 'normal, inherent, and foreseeable risks' of the safety professions, provided the injuries arise from a person's grossly negligent, wanton, wilful, or intentional conduct (subsection 1[a]), or from ordinary negligence, as long as other enumerated conditions are satisfied (subsection 1[c])." *Tull*, 268 Mich App at 29-30. Subsection 1(b), which permits recovery under product liability theories under some circumstances, is not pertinent here. *Id*. at 30 n 3.

Defendants argue that the trial court erred in concluding that plaintiffs could pursue an ordinary negligence claim. In particular, defendants contend that plaintiffs cannot satisfy the requirement in MCL 600.2967(1)(c)(*iv*)(A) that their police car was being operated in conformity with the laws applicable to the general public. We agree with defendants' argument. To recover for ordinary negligence for an injury or death arising from the normal, inherent, and foreseeable risks of his or her profession[3], a safety officer must satisfy all four of the requirements set forth in MCL 600.2967(1)(c) (permitting recovery where "[a]n injury or resulting death that is a basis for the cause of action was caused by a person's ordinary negligence and *all* of the following are true: . . .") (emphasis added). The fourth requirement for ordinary negligence is that either the police vehicle was being operated in conformity with the laws applicable to the general public, MCL 600.2967(1)(c)(*iv*)(A), or the act involved the legally required or authorized duties of the profession that did not substantially increase the likelihood of death or injury, MCL 600.2967(1)(c)(*iv*)(B). Although the trial court's reasoning was cursory, it

---

[3] Plaintiffs do not dispute that the occurrence of a traffic accident while responding to an emergency call at a high rate of speed is a normal, inherent, and foreseeable risk of their profession as police officers. We note that traffic accidents are a normal, inherent, and foreseeable risk that arises directly from a police officer's duties, which include responding to emergency calls. See *Woods v City of Warren*, 439 Mich 186, 193; 482 NW2d 696 (1992); *Stehlik v Johnson (On Rehearing)*, 206 Mich App 83, 87-88; 520 NW2d 633 (1994).

appears the court found a genuine issue of material fact regarding whether plaintiffs' police vehicle was being operated in conformity with the laws applicable to the general public because plaintiff Clifford Lee, Jr., a Detroit police officer, was entitled to exceed the speed limit as he was proceeding to an armed robbery in progress.

The trial court's reasoning is flawed. Although plaintiffs' police vehicle was being operated in conformity with the law generally, and in conformity with laws applicable to government emergency vehicles, it was *not* being operated in conformity with the laws *applicable to the general public*. It is unlawful for the general public to exceed the posted speed limit; a person who fails to obey the speed laws is responsible for a civil infraction. See MCL 257.627(3), 257.628(7), 257.629(6), 257.629b(2). It is undisputed that the vehicle that Lee was operating, and in which plaintiff Emily Kincaid, also a Detroit police officer, was a passenger, was being driven in excess of the posted speed limit. Lee admitted that he was traveling at approximately 55 to 60 miles an hour, in excess of the posted speed limit of 35 miles an hour. Kincaid also admitted that Lee was traveling over the speed limit. Thus, the vehicle was not being operated in conformity with the laws applicable to the general public.

It is true that police officers and firefighters may exceed the speed limit when responding to an emergency call if their vehicle's siren and emergency lights are activated. See MCL 257.603(2), (3)(c), (4); MCL 257.632. But these provisions apply only to authorized emergency vehicles. See MCL 257.603(1). In other words, the statutory exception permitting safety officers to exceed the speed limit in emergencies does not apply to the general public. Therefore, because the police vehicle that Lee was operating and in which Kincaid was a passenger was not being operated in conformity with the laws *applicable to the general public*, plaintiffs have not satisfied the condition in MCL 600.2967(1)(c)(*iv*)(A) for pursuing a claim of ordinary negligence.

Plaintiffs do not contend that they can satisfy the alternative condition set forth in MCL 600.2967(1)(c)(*iv*)(B), and the trial court did not address this provision. In any event, it is beyond reasonable dispute that driving 20 to 25 miles an hour in excess of the posted speed limit, as Lee admitted he was doing, substantially increased the likelihood of death or injury. See *Holloway v Cronk*, 76 Mich App 577, 583; 257 NW2d 175 (1977) ("An automobile, when operated at an excessive rate of speed, becomes a dangerous instrumentality capable of inflicting serious injury or death.").[4] Hence, this alternative condition is unsatisfied. Accordingly,

---

[4] We do not suggest that it was inappropriate for Lee to exceed the speed limit, given that he was responding to a radio dispatch of an armed robbery in progress, and, as discussed, police officers are allowed to exceed the speed limit in such circumstances if they activate their sirens and emergency lights. But the fact remains that, to establish the alternative condition in MCL 600.2967(1)(c)(*iv*)(B) for avoiding the firefighters rule barring liability for ordinary negligence, plaintiffs were required to establish that they were engaged in "[a]n act involving the legally required or authorized duties of the profession *that did not substantially increase the likelihood of the resulting death or injury*." (Emphasis added.) As discussed, it is beyond reasonable dispute that traveling at speeds far in excess of the posted speed limit substantially increases the likelihood of death or injury. In short, although police officers are allowed to exceed the speed

plaintiffs have not established a genuine issue of material fact with respect to MCL 600.2967(1)(c)(*iv*), which is one of the four required conditions for pursuing an ordinary negligence claim as an exception to the statutory firefighters rule barring liability. Therefore, defendants were entitled to summary disposition with respect to plaintiffs' ordinary negligence claim.

Next, defendants argue that plaintiffs cannot establish gross negligence or other culpable conduct under MCL 600.2967(1)(a). Defendants acknowledge that the trial court did not find that a genuine issue of material fact existed under this provision. Nonetheless, defendants address this issue to support their contention that the trial court's error with respect to its analysis under MCL 600.2967(1)(c) was not harmless. We will address the issue given that it was raised by the parties below. See *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994) ("In any event, assuming, arguendo, that the trial court failed to rule on the issue, plaintiffs should not be punished for the omission of the trial court."); *Loutts v Loutts*, 298 Mich App 21, 23-24; 826 NW2d 152 (2012) ("We would have appreciated it if the trial court had addressed this issue, but because it was raised there and is now being pursued on appeal, it is preserved for our review.").

MCL 600.2967(1)(a) permits liability where the injury or death was caused by gross negligence; wanton, willful, or intentional conduct; or conduct that results in a conviction. There is no evidence that defendants were convicted of any crimes in connection with this matter. A defendant's misconduct is willful if the defendant intended to harm the plaintiff. *Odom v Wayne Co*, 482 Mich 459, 475; 760 NW2d 217 (2008). No evidence exists that defendants intended to harm plaintiffs. Thus, plaintiffs have not established a material factual dispute regarding intentional or willful misconduct.

" 'Grossly negligent' means conduct so reckless as to demonstrate a substantial lack of concern for whether injury results." MCL 600.2967(3)(a). Wanton misconduct means conduct or a failure to act that reflects such indifference to whether harm results that it is equivalent to a willingness that harm results. *Odom*, 482 Mich at 475. We conclude that there is no evidence from which reasonable minds could conclude that defendants were grossly negligent or that they engaged in wanton misconduct.

Plaintiffs argue that Croskey engaged in texting while driving and that this constitutes gross negligence. But the record is devoid of evidence that Croskey texted while driving at the time of the accident. Croskey's phone records show that on the date of the accident, he sent a text message at 12:46 p.m. and received a text message at 12:47 p.m.. The exact time of the accident is unclear. The police report states that the accident occurred at either 12:48 p.m. or 12:55 p.m., and the 911 record indicates that the accident was reported at 12:52 p.m. Croskey stated that it takes him a minute or two to pull out into traffic and to get his vehicle parallel with the road. Assuming that the accident occurred at 12:48 p.m., the earlier time indicated on the

---

limit in emergencies if certain conditions are met, they may file a lawsuit for injuries they sustain only if the requirements of MCL 600.2967 are satisfied. This Court does not second-guess the wisdom of the Legislature's policy decisions. *Wurtz v Beecher Metro Dist*, 495 Mich 242, 255; 848 NW2d 121 (2014).

police report, given that the 911 record shows that the accident was reported at 12:52 p.m., and assuming that it took Croskey a minute or two to pull onto the road after making his delivery to a store, this does not establish that he was texting while driving at the time of the accident. Croskey could have sent the text message at 12:46 p.m. and still had time to pull onto the road before the accident occurred at 12:48 p.m. Although Croskey's phone records indicate that he received a text message at 12:47 p.m., there is no evidence that he read the message at that time. Croskey testified that he did not text while driving at the time of this accident and that he would never do so because he knows that it is unsafe and distracting. No eyewitnesses have testified that they observed Croskey texting while driving. Accordingly, it is a matter of speculation or conjecture to assert that Croskey was texting while driving. Speculation and conjecture are insufficient to establish a genuine issue of material fact. *Karbel v Comerica Bank*, 247 Mich App 90, 97; 635 NW2d 69 (2001).

Plaintiffs assert that Croskey violated provisions of the Motor Vehicle Code. However, the rebuttable presumption arising from a statutory violation is one of ordinary negligence, not gross negligence. *Poppen v Tovey*, 256 Mich App 351, 358; 664 NW2d 269 (2003). Evidence of ordinary negligence is insufficient to raise a triable issue concerning gross negligence. *Maiden v Rozwood*, 461 Mich 109, 122-123; 597 NW2d 817 (1999); *Poppen*, 256 Mich App at 358. Gross negligence is established only where the defendant's conduct is substantially more than negligent. *Maiden*, 461 Mich at 122. Therefore, Croskey's purported violations of the Motor Vehicle Code do not establish that he was grossly negligent.

It is true that, when viewed in the light most favorable to plaintiffs, the evidence arguably suggests that Croskey failed to notice or yield to plaintiffs' oncoming vehicle when Croskey pulled onto Plymouth Road. However, this evidence establishes, at most, ordinary negligence rather than gross negligence. There are no facts suggesting that Croskey acted with "an affirmatively reckless state of mind with intent to depart from careful driving." *Brooks v Haack*, 374 Mich 261, 265; 132 NW2d 13 (1965) (quotation marks and citations omitted). See *id*. at 266-267 (finding no evidence of culpable conduct greater than ordinary negligence in a single car accident where the defendant's vehicle left the road after apparently speeding and losing control); *Romine v Cleveland*, 46 Mich App 4, 7-8; 207 NW2d 438 (1973) (upholding a directed verdict because the defendant's attempt to pass another vehicle traveling at 45 to 50 miles an hour in a fog at night did not comprise gross negligence or willful and wanton misconduct). Croskey's conduct was not "so reckless as to demonstrate a substantial lack of concern for whether injury results." MCL 600.2967(3)(a). Accordingly, plaintiffs have failed to establish a genuine issue of material fact concerning gross negligence or other culpable conduct under MCL 600.2967(1)(a) as an exception to the statutory firefighter's rule barring liability.

Reversed and remanded for entry of summary disposition for defendants. We do not retain jurisdiction.

/s/ Jane M. Beckering
/s/ Mark J. Cavanagh
/s/ Henry William Saad

-7-